Deborah D. PETERSON, Personal Representative of the Estate of James C. Knipple (Deceased), et al., Appellants

v.

ISLAMIC REPUBLIC OF IRAN, et al., Appellees.

No. 13–7086.

United States Court of Appeals, District of Columbia Circuit.

June 13, 2014.

Thomas Fortune Fay, Fay Kaplan Law, PA, Washington, DC, for Appellants.

Bruce Edward Clark, Alexander John Willscher, Sullivan & Cromwell LLP, New York, NY, for Appellees.

Alan L. Balaran, Esquire, Washington, DC, pro se.

Before: BROWN, GRIFFITH and MILLETT, Circuit Judges.

*JUDGMENT*

This case was considered on the record from the district court and on the briefs of the parties. *See* FED. R.APP. P. 34(a)(2); D.C.CIR. R. 34(j). It is

**ORDERED** and **ADJUDGED** that the denial of the appellants' motion for sanctions and motion to schedule discovery be affirmed.

Appellants are family members and representatives of the estates of servicemen killed in the 1983 bombing of the U.S. Marine barracks in Beirut. In 2007, they obtained a default judgment of $2.7 billion against Iran for its role in the attacks,

which they have been trying to collect ever since. As part of that effort, appellants obtained writs of attachment, directed at various financial institutions, for "any money, property, or credits" of Iran (or its listed instrumentalities) held by the banks. Appellants obtained those writs pursuant to section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub.L. No. 107–297, 116 Stat. 2322, 2337, which "subject[s] to execution or attachment" "the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)" against which a plaintiff holds a judgment. Iran is a terrorist party for purposes of TRIA.

Appellee HSBC Bank USA (HBUS) was one of the financial institutions appellants served with a writ. Although HBUS represented that it did not hold any property of Iran, appellants eventually learned that HBUS in fact held three "blocked" electronic funds transfers (EFTs) directed to Iranian banks totaling approximately $25,000. An EFT is a mechanism whereby a party with an account in one bank (the originator) can transfer funds to a party with an account in another bank (the beneficiary) via a third bank (the intermediary). HBUS, as intermediary, had blocked the three EFTs at issue here pursuant to federal regulations (distinct from TRIA) requiring U.S. banks to block EFTs involving certain Iranian beneficiary banks. Thus, instead of crediting the beneficiary banks as it normally would, HBUS debited the account of the originator's bank and placed the proceeds into a special, frozen account at HBUS overseen by the U.S. government's Office of Foreign Assets Control. Appellants, believing that HBUS had lied by failing to disclose these three blocked EFTs, filed motions seeking sanctions and discovery, which the district court denied.

On appeal appellants argue that Iran has a property interest in the funds associated with the three blocked EFTs. This court's decision in *Heiser v. Islamic Republic of Iran*, 735 F.3d 934 (D.C.Cir. 2013), however, forecloses this argument. In *Heiser*, which also involved blocked EFTs originally destined for Iranian banks, we held that such EFTs were not subject to attachment because they were not owned by Iran. As we explained:

> Iran was not the beneficiary or originator, but the owner of the beneficiary's bank for each funds transfer, and legal title does not pass to the beneficiary's bank until it accepts the payment order from the intermediary bank. The Iranian beneficiary banks never received a payment order because the funds transfers were blocked at the intermediary banks, and they never held legal title to the money in the contested accounts.

*Id.* at 941 (internal citations, brackets, and quotation marks omitted). Because Iran had no ownership interest in the accounts, we held that the funds were not subject to attachment under TRIA § 201. *Id.* The same is true here. Because the blocked EFTs are not the property of Iran, they did not fall within the scope of the attachment, and therefore HBUS's failure to disclose them is not sanctionable.

Appellants now claim that discovery is needed to explore whether Iran might be an originator of any of the blocked EFTs. But that was not the discovery they sought and were denied in the district court. That motion, brought before our ruling in *Heiser*, was based solely on the claim made in appellants' motion for sanctions that Iran was a beneficiary of the blocked EFTs, not an originator. The district court did not abuse its discretion denying the motion for sanctions and its accompanying discovery request. *Cf. Ned Chartering & Trading, Inc. v. Republic of*

*Pakistan,* 294 F.3d 148, 155 (D.C.Cir.2002) (district court did not abuse its discretion in denying further discovery where "the only possible relevant reason [for discovery] ... was not presented to that court").

Accordingly, we affirm.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41(a)(1).